NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHARON VARECHA, | Civil Action No. 17-2599 (SDW) |
| Plaintiff, | |
| v. | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | December 3, 2018 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Sharon Varecha's ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Marguerite Toland's ("ALJ Toland") denial of Plaintiff's claim for a period of disability and disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.[1] This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Toland's factual findings are

---

[1] This Court considers any arguments not presented by the parties to be waived. *See Brenner v. Local 514, United Bhd. of Carpenters & Joiners*, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

1

supported by substantial credible evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

I. PROCEDURAL AND FACTUAL HISTORY

   A. Procedural History

On August 14, 2012, Plaintiff filed an application for a period of disability and disability insurance benefits. (Administrative Record [hereinafter Tr.][2] 219.) Plaintiff also filed an application for supplemental security income on February 4, 2013.[3] (Tr. 221.) Both claims were denied initially on February 6, 2013, and again on reconsideration on June 5, 2013. (Tr. 15.) Plaintiff then filed a written request for a hearing on July 24, 2013. (*Id.*) On March 18, 2015, Plaintiff appeared and testified at an administrative hearing before ALJ Toland in Pennsauken, New Jersey.[4] (Tr. 51.) Subsequently, ALJ Toland concluded that Plaintiff was not disabled under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Act from the alleged onset date of February 28, 2012, through August 31, 2015, the date of ALJ Toland's decision. (Tr. 15.) Thus, the ALJ issued an opinion affirming the denial of benefits. (Tr. 15-43). This appeal followed. (ECF No. 1).

   B. Factual History

      1. Personal and Employment History

Plaintiff was forty-three years old at the alleged onset of her disability on February 28, 2012. (Tr. 219.) Plaintiff has a high school education. (Tr. 56.) At the time of the administrative hearing, Plaintiff's most recent significant employment was as an operations manager of an

---

[2] The Administrative Record which uses continuous pagination can be found at ECF No. 6.
[3] This Court notes that there is a non-dispositive discrepancy with the filing dates cited by the ALJ in her decision and those indicated in Plaintiff's applications for disability insurance and supplemental security income. (Tr. 15.)
[4] At the hearing, Plaintiff amended the alleged onset date to February 28, 2012, to reflect the start of treatment with Hunterdon Behavioral Healthcare. (Tr. 56.)

2

investment firm, and a customer service representative. (Tr. 56-57, 65, 253, 263.) In those positions, Plaintiff performed primarily sedentary work: answering phones, scheduling appointments, handling daily operations, and typing. (Tr. 264-65.) Plaintiff's job did not require her to lift or carry items weighing more than 10 pounds. (Tr. 67, 264-68.) Plaintiff has not performed paid work since June 12, 2011. (Tr. 252.)

### 2. Function Report and Medical History

On August 25, 2012, Plaintiff completed a function report containing the following information: she lives alone in an apartment and her daily activities include making meals to eat, cleaning, doing laundry, showering, caring for her dog, and napping.[5] Plaintiff also reported that since the onset of her alleged disability, she no longer works, shops, cleans her home, walks her dog, socializes, reads, or uses a computer. She also has difficulty sleeping through the night. (Tr. 286-287.)

Plaintiff's medical records demonstrate that between 2012 to 2015, she consulted with, and was treated and examined by, numerous medical practitioners for the physical and mental symptoms associated with her disability claim. (Tr. 261-69, 277-78, 280-83, 288-350, 399-403, 487, 552, 557, 569, 767, 773, 777, 784, 787, 795, 798, 801, 809, 815.) Plaintiff initially sought disability benefits due to a diagnosis of bipolar disorder, depression, and anxiety. (Tr. 341, 343, 500.) She was treated for these symptoms at Hunterdon Medical Center/Hunterdon Behavioral Healthcare. (Tr. 56, 500.) During this time, she was seen by Maureen Walsh, A.P.N., Kathryn Newland, A.P.N., Sonia Lassen, Psy.D., and Robert Anders, A.P.N. (Tr. 487, 500, 552, 764.)

In June 2014, Plaintiff was also diagnosed with breast cancer. (Tr. 691, 696.) She was treated with chemotherapy and a partial mastectomy. (Tr. 657-58, 680, 746.) As a result of

---

[5] In the report, Plaintiff noted that she was not able to do all of these activities daily.

3

chemotherapy treatment, Plaintiff developed peripheral neuropathy, which caused numbness in her hands and feet. (Tr. 668, 680, 836.) On January 23, 2015, Plaintiff's oncologist, Brian M. Quinn, M.D., completed a "Physical Residual Functional Capacity Questionnaire," which explained the following: Plaintiff had been experiencing side effects related to chemotherapy, including peripheral neuropathy primarily in the hands and feet, which caused decreased sensation on the fingertips; Plaintiff could sit for at least six hours in an eight-hour working day (with normal breaks); Plaintiff would need to take 1-2 unscheduled breaks during the day; Plaintiff did not require a cane or other assistive device; Plaintiff was able to use fine manipulations for ten percent of an eight-hour working day; and Plaintiff was able to grasp, turn, or twist objects for twenty-five percent of an eight-hour working day. (Tr. 680-83.)

Additionally, Plaintiff has been prescribed a number of different medications to treat both her mental and physical symptoms: Abilify, Remeron, Celexa, Citalopram, Vicodin, Wellbutrin, Lamictal, Lexapro, Lamotrigine, Pramipexole, Mirtazapine, Hydroxyzine, Gabapentin, Prazosin, Valium, Vistaril, Taxol, Herceptin, and Trazodone.[6] (Tr. 72-74, 304, 315, 399, 685, 668, 700, 836.)

    **3. Hearing Testimony**

ALJ Toland held a hearing on March 18, 2015, during which Plaintiff testified to the following: she has been struggling with depression and anxiety, which causes her to stay in bed all day (Tr. 63); the side effects from chemotherapy have made these issues worse (*id*.); she experiences neuropathy in her hands and feet (Tr. 60); she has no strength in her left hand and can only use three of her fingers; she can only lift two pounds in her right hand (Tr. 60-61); and her

---

[6] Although some of the names of Plaintiff's medications were misspelled in the record, this Court has included the correct spellings above.

4

neuropathy has not responded to the medication, Neurontin, causing Dr. Quinn to believe that permanent nerve damage was present (Tr. 61-62).

Vocational Expert Marian R. Marracco ("VE Marracco") also testified at the hearing. She testified that there are jobs that exist in significant numbers in the national economy that could be performed by a hypothetical individual limited to sedentary exertional work with the following attributes: Plaintiff's age, education, and past job experience; the ability to only occasionally climb ramps and stairs; the ability to perform no more than frequent handling; the need to have low stress work and no more than occasional interaction with the public; and the ability to understand, remember, and carry out simple instructions consistent with unskilled work. (Tr. 92.) The described hypothetical individual could perform the following three occupations: an assembler for small products (approximately 236,000 jobs available), an addresser (approximately 96,000 jobs available), and a carding machine operator (approximately 274,00 jobs available). (Tr. 92-93.)

VE Marracco stated that if the same hypothetical individual could only occasionally interact with the public, co-workers and supervisors, those jobs would still exist, but that limitation may erode the national numbers by approximately fifty percent based upon the supervision. (Tr. 94.) If the hypothetical individual needed a cane to ambulate, that would not rule out any of these jobs. (*Id*.) VE Marracco noted that the same would be true if the hypothetical individual was off task for no more than ten percent of the time. (*Id*.)

However, the same would not be true if the individual was off task for fifteen percent of an eight-hour work day. (*Id*.) VE Marracco further testified that the position of an assembler or an addresser would not be available if the hypothetical individual was limited to fingering manipulations on only an occasional basis. (Tr. 95.) If the hypothetical individual had an additional limitation of being absent from work three days per month due to medical impairments

5

and his or her required treatment, no positions would be available within those limitations. (*Id*.) After the hearing, ALJ Toland allowed the medical record to remain open until April 7, 2015. (Tr. 15.)

## II. **LEGAL STANDARD**

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 U.S. Dist. LEXIS 32110, at *7 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). "[W]here there is conflicting evidence, the

6

ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." 42 U.S.C. § 423(d)(5)(A). To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480.

## III. DISCUSSION

Plaintiff argues that the Commissioner erred in finding that Plaintiff is limited to no more than frequent handling, and the Commissioner improperly gave lesser weight to portions of two different treating source opinions regarding absenteeism. (ECF No. 10.) As explained below, ALJ Toland properly applied the five-step disability test before determining that Plaintiff was not disabled. The ALJ's findings are supported by substantial credible evidence and there is no basis

7

for remand or reversal because the ALJ appropriately considered all of Plaintiff's medically-supported complaints.

At step one of the five-step test, ALJ Toland determined that Plaintiff has not engaged in substantial gainful activity since February 28, 2012, the amended alleged onset date of her disability. (Tr. 17); 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571 *et seq.*, 416.920(a)(4)(i); 416.971 *et seq*. At step two, the ALJ found that Plaintiff's history of breast cancer, status post mastectomy with chemotherapy related neuropathy, obesity, bipolar disorder and anxiety are severe impairments because they significantly interfere with work-related activities and are well documented in the record.[7]  (Tr. 17-18); 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).

At step three, ALJ West found that Plaintiff does not have an impairment that meets the severity of one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"), and supported her conclusions with substantial evidence (Tr. 20-23), including Plaintiff's function report, records from consultative exams, and psychiatric evaluations. (*See e.g.*, Tr. 396-398, 486-487); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Specifically, Plaintiff's impairments were compared with those in Listings §§ 12.04, 12.06, and 13.10.[8] (Tr. 20-23.) In considering §§ 12.04 and 12.06, the ALJ evaluated Plaintiff's mental impairments by assessing the following functional criteria listed in paragraph b: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in

---

[7]ALJ Toland also acknowledged that Plaintiff alleges disability due to status post cholecystectomy, myalgias, obstructive sleep apnea/restless leg syndrome, ankle sprain, rash, sinusitis, and asthmatic bronchitis, but determined that these physical impairments do not limit her ability to perform work-related activities, or at least have not done so for the required duration. (Tr. 18-20.)

[8] Section 12.04 addresses depressive, bipolar and related disorders, § 12.06 addresses anxiety and obsessive-compulsive disorders, and § 13.10 addresses breast cancer.

maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (*Id.*) Accordingly, the ALJ noted mild to moderate difficulties for the above-criteria, but found no evidence of a complete inability for Plaintiff to function outside the home; nor did she find that Plaintiff experienced episodes of decompensation for an extended duration. (Tr. 23.) The ALJ concluded that Plaintiff did not meet the criteria in paragraph b.

ALJ Toland went on to consider whether Plaintiff satisfied paragraph c, and similarly found that Plaintiff did not meet those requirements. In considering § 13.10, ALJ Toland explained that Plaintiff does not meet the Listing's criteria because she does not have a locally advanced carcinoma nor has she established the additional requirement under § 13.10B of metastases. Thus, ALJ Toland properly found that Plaintiff does not have an impairment that meets or medically equals one of the Listings as his findings were supported by the medical records.[9]

At step four, ALJ West followed the proper two-step process to first determine Plaintiff's residual functional capacity ("RFC").[10] (Tr. 23-24); 20 C.F.R. §§ 404.1520(e), 416.920(e); SSR 16-3p (explaining the two-step process within step four). At the first step, the ALJ concluded the following: Plaintiff's neuropathy could reasonably be expected to cause some numbness in her hands and feet, and difficulty walking; and Plaintiff's anxiety could be expected to increase since her diagnosis of breast cancer. (Tr. 24.) At the second step, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not

---

[9] *See contra G.S. v. Berryhill*, No. 16-8756, 2018 U.S. Dist. LEXIS 182881, at *7 (D.N.J. Oct. 25, 2018) (remanding the case because "the ALJ failed to provide any explanation to support her conclusion that Claimant's disabilities did not meet or medically equal Listing [at issue]").

[10] First, the ALJ determines "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms." (Tr. 16.) Second, the ALJ "evaluate[s] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning." (*Id.*)

entirely credible. (Tr. 24-41.) With respect to Plaintiff's alleged handling limitations, the ALJ noted that one month prior to the hearing Plaintiff's oncologist reported that Plaintiff had no extremity weakness and numbness, and her neurological sensation was normal. (Tr. 702-05.) Thus, the ALJ's finding of frequent handling was supported by the medical evidence.

After carefully considering the entire record, ALJ Toland found that Plaintiff had the RFC

> to perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a), except that she could only occasionally climb ramps or stairs. She is limited to no more than frequent handling.[11] She can have no more than occasional interaction with the public, co-workers or supervisors. She can understand, remember and carry out simple instructions consistent with unskilled work. She would be limited to low stress work, defined as routine work that would not involve fast production rate pace or strict production quotas. She would need a cane to ambulate. She would be off task 5 percent of the work day in addition to normal breaks.

(Tr. 23.) Given Plaintiff's RFC, the ALJ determined at step four that Plaintiff's prior work as a scheduling clerk and an office manager exceeds the RFC assigned, and Plaintiff is unable to perform any past relevant work. (*Id*.); 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(e)-(f), 416.920(a)(4)(iv), 416.920(e)-(f). In reaching her decision, the ALJ acknowledged that she gave little weight to opinions formed prior to the alleged onset date and those opinions regarding Plaintiff's physical limitations prior to her cancer diagnosis. (Tr. 37.) Although Plaintiff objects to the ALJ's decision to give lesser weight to the opinions of certain treating sources regarding her handling limitation and potential absenteeism, it is well established that "the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Eich v. Berryhill*, No. 17-5815, 2018 U.S. Dist. LEXIS 197586, at *26 (D.N.J.

---

[11] Plaintiff has failed to provide medical evidence supporting the permanency of this limitation given that Plaintiff's oncologist noted that Plaintiff was in complete pathologic remission. (Tr. 702.)

Nov. 20, 2018) (citation omitted); *see also Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011) ("[T]he opinion of a treating physician does not bind the ALJ on the issue of functional capacity.")

At step five, ALJ Toland properly considered VE Marracco's testimony before concluding that Plaintiff can perform three jobs even with Plaintiff's additional social and physical limitations, including being off task up to ten percent of the workday. (Tr. 42, 92-93); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Assuming this Court held that the ALJ erred in finding that Plaintiff is limited to no more than frequent handling, that finding would not be dispositive. Indeed, VE Marracco testified that even if an individual was limited to fingering manipulations only occasionally, the position of a carding machine operator would still be available, which is sufficient to support the ALJ's finding that Plaintiff is not disabled. (Tr. 95.) As long as there is a significant number of jobs in one occupation that Plaintiff can perform, she is not deemed disabled under the regulations. *See* 20 C.F.R. §§ 404.1566(b), 416.966(b); *see also Thornton v. Astrue*, No. 12-2524, 2013 U.S. Dist. LEXIS 16491, at *20 (E.D. Pa. Feb. 7, 2013) (explaining that "[a]n ALJ need only identify a single job within the claimant's work capacity that exists in sufficient numbers in the national economy"). The law requires this Court to give deference to the ALJ's findings if it is supported by substantial evidence in the record. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008).

**IV.     CONCLUSION**

Because this Court finds that ALJ Toland's factual findings were supported by substantial credible evidence in the record and her legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

                                                            s/ *Susan D. Wigenton*
                                                            **SUSAN D. WIGENTON**
                                                            **UNITED STATES DISTRICT JUDGE**

Orig:   Clerk
cc:     Parties